**Herbert A. HILL and Alfred E. Hill, Executors of the Estate of Alfred W. Hill, Deceased, Appellants,**

**v.**

**UNITED STATES of America.**

**No. 12757.**

United States Court of Appeals Third Circuit.

Argued Jan. 20, 1959.

Decided Feb. 25, 1959.

Samuel Kalikman, Camden, N. J., for appellant.

Carter Bledsoe, Washington, D. C., for appellee, Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., Herman Scott, U. S. Atty., Newark, N. J., Robert T. Woodruff, Asst. U. S. Atty., Camden, N. J., on the brief.

Before GOODRICH and HASTIE, Circuit Judges, and EGAN, District Judge.

GOODRICH, Circuit Judge.

This is a suit to recover for taxes paid by the plaintiffs who are executors of the Estate of Alfred W. Hill, deceased. The district court gave judgment for the defendant, D.C.D.1958, 167 F.Supp. 96, and the plaintiffs appeal.

No factual dispute is involved; indeed, the facts were stipulated. Those necessary to present the point of this appeal may be very briefly stated. Alfred W. Hill died October 6, 1948. On January 13, 1950, the present taxpayers made a return indicating an estate tax liability in the amount of $12,532.89 and a check for this amount was enclosed with the return. The remittance was credited to the taxpayer's account on January 13, 1950, and a form receipt bearing the Collector's stamp marked "Paid January 18, 1950" was issued. The return was a week late. On January 19, 1950, the taxpayer made remittance of $14.42 for the interest due. A form receipt dated January 19, 1950, and bearing a Collector's stamp marked "Paid January 20th" was issued. The Commissioner signed the assessment certificate on February 14, 1950.[1]

---

1. There was a later payment because of an alleged deficiency. Claim to recover this payment was made within the statutory period and a refund made. It, therefore, drops out of any question before us in this case.

After the events just recited occurred it was discovered by the executors that a debt of something more than $85,000 owing by the decedent had been erroneously omitted from schedule K of the federal estate tax return filed. This, of course, made a difference in the amount of tax which the United States was entitled to collect. Claim for refund was filed on January 5, 1954, and suit was brought July 3, 1956.

The case turns on the application of Section 910 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 910. The relevant sentence is this: "All claims for the refunding of the tax imposed by this subchapter alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner within three years next after the payment of such tax."

If what the taxpayers did when they made their return and enclosed their check on January 13, 1950, was "payment," then quite obviously they have not complied with the time limit set by the statute.[2] We think that what they did was payment and whether the payment took place when they mailed the check or when the Collector received it is immaterial to this case.

In our view the problem involved is a simple one. We said in Busser v. United States, 3 Cir., 1942, 130 F.2d 537, 539, that the common use of the term "payment" in both laymen's language and lawyers' language explains it as "something given to discharge a debt or obligation." Mr. Justice Frankfurter pointed out in Rosenman v. United States, 1945, 323 U.S. 658, 661, 65 S.Ct. 536, 537, 89 L.Ed. 535, that the three year requirement was "couched in ordinary English" and that "Congress has evidently meant what these words ordinarily convey." If a man in a haberdashery shop sees a tie marked $3.00 on the counter, picks it up and hands it to a clerk with three $1.00 bills we think there is no doubt in his mind or the clerk's mind that the money is being tendered as payment for the tie. To us this case is just as clear. A taxpayer makes out his return form; he accompanies it with a check for the amount he figures he owes. If that is not the sending of money in discharge of the debt it is hard to figure out what a "payment" can be.

It is true that the Government does not provide for the taxpayer any such simple method of ascertaining how much he owes as is indicated by the price tag on the tie. Nevertheless, the statutes and regulations do provide a set of rules in both federal estate tax and income tax and millions of taxpayers make their returns and write out their checks either as the rules direct or as the taxpayers think the rules direct.

The taxpayer draws our attention to a number of court decisions. The Busser case, cited above, is one. This decision was cited in the Rosenman opinion, the latter being the chief reliance by the taxpayer in this appeal. But the Rosenman case was quite different. The taxpayer said, when he made the payment, that he was sending his check "solely for the purpose of avoiding penalties and interest." On receipt of the check and the taxpayer's letter the Collector placed the money in his suspense account. Mr. Justice Frankfurter described such payments thus: "They are, as it were, payments in escrow. They are set aside * * * in special suspense accounts established for depositing money received when no assessment is then outstanding against the taxpayer * * * Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due." 323 U.S. at page 662, 65 S.Ct. at page 538.[3]

---

2. The same holds true of the sending of the $14.42 interest check a week later.

3. We do not think it necessary that the Collector put the remittance in his suspense account to make the taxpayer's remittance something other than a payment. See Thomas v. Mercantile Bank at Dallas, 5 Cir., 1953, 204 F.2d 943, 944.

On the same general point and relevant in this connection are Lewyt Corp. v. Commissioner, 2 Cir., 1954, 215 F.2d 518; Budd Co. v. United States, 3 Cir., 1957, 252 F.2d 456; Rose v. United States, 3 Cir., 1958, 256 F.2d 223.

The difference, then, is whether a taxpayer gives the Government money in discharge of his tax debt or gives it money to stop interest and penalties while he and the Government contest what the debt is to be. We do not have any doubt that in the ordinary case where a taxpayer fills out his form, makes out his check and sends them in that he intends the remittance to be in discharge of his liability and that the Collector receives it in the same way.

The judgment of the district court will be affirmed.