Dorothy Margaret **HANSEN-STURM** and Margaret Johanna **MacBain**, Executrices of the Last Will and Testament of Johanna Gristede, Deceased, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

United States District Court
S. D. New York.
Jan. 11, 1962.

Joseph Buch, New York City, for plaintiffs.

Robert M. Morgenthau, U. S. Atty., S. D. New York, New York City, for defendant; Myron J. Wiess and Morton L. Ginsberg, Asst. U. S. Attys., New York City, of counsel.

METZNER, District Judge.

This is an action by the executrices of taxpayer's estate to recover an overpayment of taxes. The government has moved for summary judgment.

The taxpayer remitted estimated tax for the year 1953, in the sum of $49,019.-82, as follows: March 1953—$9,203.97; June 1953—$27,611.89; September 1953 —$9,203.96. Taxpayer filed her income tax return for 1953 on January 18, 1954, and showed thereon a tax of $39,536.68. $2,514.68 had been withheld from her income during the taxable year, and she only claimed payments of estimated tax of $27,611.91. These two figures total $30,126.59. She therefore paid with the filing of the return $9,410.09. This suit seeks recovery of the monies paid on the estimated tax which she failed to include in the final return for the year.

In January 1955 taxpayer filed her return for the taxable year 1954, in which she did not request a credit for the overpayment for the year 1953. On March 13, 1958 she filed a claim for refund for the year 1953 of $18,407.89 on form 843, and also filed an amended return for the year 1954 requesting credit for the overpayment made for 1953. She also filed an alternative amended return for 1954, claiming a refund due of $6,501.17, on the theory that the $9,410.09 that she remitted in January 1954 was a charitable contribution for which she was entitled to a deduction, since no amount had been then owing to the government. Later, at a conference with agents of the Internal Revenue Service, taxpayer's representatives orally claimed a refund of $9,410.09 as money paid when no tax was due. All claims were denied by the Service, and this suit followed.

Plaintiffs assert several grounds for relief. First, they claim that $18,407.89 has been erroneously and illegally collected from the taxpayer, and allege jurisdiction under 28 U.S.C. § 1346(a) (1). Second, they assert that the retention of that sum was "a confiscatory taking and unlawful retention of property without due process of law in violation of the Fifth Amendment to the United States Constitution and other laws guaranteed to said taxpayer as a citizen of the United States of America and of the State of New York." Third, they claim that the government has been unjustly enriched to the extent of $18,407.89. Fourth, they allege that they are "legally, equitably and justly entitled to recover, either upon an account-stated, monies had and received or upon other legal and equitable

grounds" $18,407.89. In the alternative, plaintiffs demand judgment for $6,501.17 or $9,401.09 as monies erroneously, illegally and wrongfully collected.

■ The government bases its motion for summary judgment on the claims founded on monies erroneously collected, on the ground that the refund claims were not timely. Int.Rev.Code of 1939, § 322(b) (1) states:

"Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later."

Int.Rev.Code of 1939, § 322(b) (4) provides that, for purposes of that subsection, "a return filed before the last day prescribed by law for the filing thereof shall be considered as filed on such last day." Thus taxpayer's return for the calendar year 1953 is deemed filed, for purposes of limitation, on March 15, 1954. Int.Rev.Code of 1939, § 53(a) (1). Section 322(b) (1) is clear that the three-year period runs from the date of filing the return for the year in which an overpayment is alleged to have been made, whether the taxpayer requests the overpayment to be credited to the next year's taxes, or refunded. Schmidt v. Commissioner, 272 F.2d 423, 429 (9th Cir. 1959) so interprets the statute. Therefore the claims on form 843 were plainly filed too late, and suit may not be maintained thereon. Int.Rev.Code of 1954, § 7422 (a).

■ Plaintiffs cite many cases holding that an amended return may correct errors in the original return, and seek thus to correct taxpayer's failure to claim credit for the 1953 overpayment on her 1954 return. However, none of these cases involved an attempt to avoid a statute of limitation by means of an amended return, and such use of the amended return procedure cannot be permitted. See

10 Mertens, Federal Income Taxation § 57.15 (Zimet rev.1958). Thus the attempt to claim credit on the 1954 return must fail.

Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945) and its progeny do not aid plaintiffs. As the Court of Appeals for the Third Circuit recognized in Hill v. United States, 263 F.2d 885 (1959), these cases involved payments made solely and specifically to stop the running of interest or penalties, where the tax liability was contested or in doubt. In the instant case, taxpayer thought she owed the amounts she forwarded, and filed a final return. The overpayment came into existence at the time the tax liability was determined by the taxpayer for the year in question by filing a final return.

■ Plaintiffs' alternative claim for $9,410.09 must be denied on the ground that it was not asserted by the proper procedure. Under the applicable regulations, Treas.Reg. § 301.6402–3, .6402–4 (1954), claims for credit or refund must be made either on form 843 or on taxpayer's income tax return. Oral claims are not proper. See 10 Mertens, op.cit. supra, §§ 58.20, 58.17. Further, it appears that this claim was not asserted until after March 15, 1958, the day on which the statute of limitations ran for claims relating to the taxable year 1954.

■■ Plaintiffs argue that sections 321, 322(a) (1) and 322(a) (3) of the Internal Revenue Code of 1939, and the applicable regulations, impose a duty on the District Director to refund to or credit the account of the taxpayer any net overpayment of taxes. In this argument plaintiffs are mistaken. These sections do not create a cause of action, but merely authorize the Director to make such credit or refund. Western Maryland Ry. v. United States, 23 F.Supp. 554 (D. Md.1938). Treas.Reg. § 301.6402–4, which permits the Director to refund overpayments of estimated tax to taxpayers prior to the filing of a claim for refund, specifically states that such claim

must be filed to protect taxpayer in the event that the Director does not make the refund. Thus plaintiffs' claim based on the theory that the payment of $9,410.09 was a charitable contribution must fail.

Plaintiffs rely on favorable treatment accorded the taxpayer's son on similar operative facts. This does not establish a practice by the Service that can bind the courts under the decision in Thurman v. Studebaker Corp., 88 F.2d 984 (7th Cir. 1937) and similar cases.

The doctrine of equitable recoupment, also raised by plaintiffs as a basis for recovery, would apply only in a suit brought by the government for collection of taxes due, involving the same transaction. See 10 Mertens, op.cit. supra, § 60.05. No such suit has been brought. Any other argument based on equity would be applicable to all instances of overpayment, and if upheld would negative the statute of limitations.

Plaintiffs assert that the alleged discovery of the overpayments, by the Director, on audit of the records of the Service in November 1956 created an account stated. However, an account stated does not arise until the account is communicated to the other party. Daube v. United States, 289 U.S. 367, 53 S.Ct. 597, 77 L.Ed. 1261 (1933); Rittenbaum v. United States, 109 F.Supp. 480 (N.D. Ga.1952). Plaintiffs never received notice of the alleged account stated, and thus this claim falls.

While plaintiffs have advanced the numerous legal arguments discussed above, they merely clothe a situation where the government is holding money of one of its citizens who paid it without realization that she was not liable to make such payment. This is not the first time this unfortunate and apparently amazing problem has arisen, but it is clear that the law affords no relief. Kavanagh v. Noble, 332 U.S. 535, 68 S.Ct. 235, 92 L.Ed. 150 (1947); Rahr Malting Co. v. United States, 260 F.2d 309 (7th Cir. 1958).

Motion granted. So ordered.