383 A.2d 937

**Walter H. DOUGLASS, Jr. and Dallas Douglass, his wife, Appellants,**

**v.**

**GRACE BUILDING CO., INC.**

Supreme Court of Pennsylvania.

Argued Jan. 13, 1978.

Decided March 23, 1978.

---

Ward E. Clark, Brenden E. Brett, Doylestown, for appellants.

Alfred O. Breinig, Jr., Jenkintown, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This appeal is from an order of the Commonwealth Court which affirmed the order of the Court of Common Pleas of Bucks County. The Bucks County court ordered and decreed that a treasurer's deed of conveyance was valid and effective to convey absolute title to appellee, Grace Building Co., Inc. (Grace Building).

An action to quiet title was brought by Walter H. Douglass, Jr. and his wife, Dallas Douglass, appellants. The facts are not disputed; the case has proceeded on stipulated facts which are as follows. In 1965 appellants bought a residence in Bucks County and thereafter paid the realty taxes through the mortgagee. However, appellants failed to comply with an agreement entered into at settlement whereby they became obligated to pay an interim school tax for the year 1966 in the amount of $191.10. In November of 1967 the Bucks County Treasurer sent a notice to appellants of the amount due, including the following clause in bold type: "PAYMENT ACCEPTED ONLY BY CASH, MONEY ORDER OR CERTIFIED CHECK." Similar delinquency notices were sent February 1, 1968, April 1, 1968, and June 3, 1968. The fourth notice also stated that a tax sale was to be scheduled for August 5, 1968, unless payment was made. No payment having been tendered by that date, the property, with a mortgage of $14,100, was sold to Grace Building.

On June 1, 1970, appellants received a final delinquency notice informing them of their right of redemption and stating that "cash, certified check or money order" in the amount of $251.26 (which included interest) was payable to the treasurer. On July 27, 1970, nine days before the expiration date of the redemption period, appellants mailed to the Bucks County Treasurer a personal check drawn on their personal account at the Girard Trust Bank in the amount of $251.26.[1] Instead of depositing appellants' uncertified check on the day of receipt, the treasurer's office mailed it back to appellants with instructions that payment would be accepted only by "cash, certified check or money order." Appellants did not have the check certified until August 6, 1970, and it was not received by the treasurer's office until August 10, 1970. On August 6, 1970, the treasurer's office deeded the property to Grace Building.

[1]. It is undisputed that appellants' checking account had sufficient funds to cover the check at all times between the date the treasurer's office received the check and August 5, the last day of the redemption period.

Appellants then brought an action to quiet title, contending that their tender of a personal check to the treasurer's office constituted payment within the meaning of § 15 of the Act of May 29, 1931, P.L. 280, § 15, as amended, 72 P.S. § 5971o, which act provides:

"§ 5971o.  Redemption money

"If any owner, his heirs or legal representatives, or any lien creditor, his heirs, assigns or legal representatives, or other person interested, shall, within two years after the day such sale was made, redeem such real estate for the benefit of the owner, by *payment* of the taxes and interest for which the lands were sold, and the costs, with an additional sum of fifteen per centum, and any taxes which may have been levied against any such property since the treasurer's sale, and which remain unpaid by the owner or redeemer, to the county treasurer, he shall receive and receipt for the same, and pay said taxes, interest, costs and additional percentage over to the purchaser upon demand, and the accrued taxes to the district entitled thereto;  and the county treasurer shall forthwith acknowledge the receipt of the redemption moneys upon the margin of the acknowledgment of the treasurer's deed, as the same is entered and recorded in the prothonotary's office as aforesaid, and, if said deed has been recorded in the office for recording of deeds, cause an entry to be made on the margin of the record of the deed in the office of the recorder of deeds, by marking thereon the word 'redeemed', which shall be signed by the county treasurer, and attested by the recorder of deeds, and thereafter said deed shall be void and of no effect. . . ." (Emphasis added.)

The Court of Common Pleas of Bucks County held that the treasurer's deed conveying the property to Grace Building was valid and effective. An appeal was taken to the Commonwealth Court, which in a five-to-two decision, affirmed the Bucks County Court. *Douglass v. Grace Building Co.,* 22 Pa.Cmwlth. 174, 348 A.2d 435 (1975). We granted appellants' petition for allowance of appeal.

■ There has been and still is but one issue during prior proceedings and this appeal: did appellants' tender to the county treasurer of an uncertified personal check constitute *"payment"* for delinquent taxes under the above-quoted redemption statute? In its majority opinion, the Commonwealth Court stated:

"Our research has revealed no case in Pennsylvania law where the issue of mode of payment in a redemption following a treasurer's tax sale has been judicially scrutinized. However, there is case law, extending back over one hundred years, which holds that a treasurer, unless he agrees to the contrary, may receive money only in *payment by a purchaser at a tax sale, Donnel v. Bellas,* 34 Pa. 157 (1859), and that payment by check is ineffective. Similarly, in *Nutting v. Lynn,* 18 Pa.Super. 59 (1901), payment was tendered to a treasurer to *prevent a tax sale* and there the court reaffirmed the rationale that payment in other than legal tender to the tax collector was no payment at all.

\*      \*      \*      \*      \*      \*

"The rationale which pervades these cases in that where a party nears the end of a limitation period, be it time for appeal, time to purchase, or as in the instant case, time to redeem, courts are reluctant to sanction what amounts to a mere promise to pay, *Ellison v. Buckley,* 42 Pa. 281 (1862), because finality of payment to the public officer insures collection without unnecessary litigation, *Walker v. Graham,* 74 Pa. 35 (1873) and in many instances, the public officer is but a conduit standing in the shoes of third parties whose rights are easily prejudiced and whose rights must be scrupulously guarded, *Donnel v. Bellas,* supra.

"With these principles in mind, we cannot and will not sanction conditional tender in the form of a personal uncertified check to the county treasurer whose duty it was to insure a *valid* redemption prior to voiding the treasurer's deed which he had already executed and delivered to Defendant. It was eminently reasonable and

perfectly valid for the treasurer to insist upon unconditional tender in the form of cash, money order or certified check. Plaintiffs were given ample notice of the tax deficiency, and the method by which it might be cleared, both prior to, and after the tax sale." (Emphasis in original.)

We believe, however, that the court's reliance on these Nineteenth Century cases is misplaced, because those cases did not take into account the realities of modern-day banking procedures. *Douglass v. Grace Building Co., supra* (dissenting opinion by Mencer, J.).

In *Ellison v. Buckley, supra,* 42 Pa. at 283, for example, the court stated:

"We cannot, however, avoid expressing our entire disapprobation of a prothonotary, or any public officer, receiving in his official capacity anything but money, in payment either of costs, or of sums intrusted to him under the orders of a court or other competent authority. If a prothonotary can take a note for money belonging to others, he may take a verbal promise to pay; or if he is debtor to the person paying, he may write off so much of his own debt. In these and other forms, he may substitute his own responsibility for actual cash, which is contrary to his duty as a public agent. . . . Besides, *each suit should terminate all its own litigation, and not be the cause of others by the substitution of notes or credits for actual cash.*" (Emphasis added.)

These cases were concerned that a treasurer, by accepting a tender of other than cash, would be accepting a mere promise to pay. During the Nineteenth Century, this was a valid concern, since all of these cases deal with promissory notes, which are a promise to pay at some specified time in the future. With modern banking procedure, checks are a promise to pay for only a short period, as the collection process employed by commercial banks normally involves a short period. A treasurer will today know whether a check has been paid or dishonored shortly after processing a check. A treasurer accepting a check is hardly substituting "his

own responsibility for cash," thus doing nothing "contrary to his duty as a public agent."

In *Hill v. United States,* 263 F.2d 885, 886 (3d Cir. 1959), the court was discussing payment under the Internal Revenue Code, and went on to state:

".  .  . We said in *Busser v. United States,* 3 Cir., 1942, 130 F.2d 537, 539, that the common use of the term 'payment' in both laymen's language and lawyers' language explains it as 'something given to discharge a debt or obligation.'  .  .  . If a man in a haberdashery shop sees a tie marked $3.00 on the counter, picks it up and hands it to a clerk with three $1.00 bills we think there is no doubt in his mind or the clerk's mind that the money is being tendered as payment for the tie.  To us this case is just as clear.  *A taxpayer makes out his return form; he accompanies it with a check for the amount he figures he owes.  If that is not the sending of money in discharge of the debt it is hard to figure out what a 'payment' can be.*" (Emphasis added.)

This Redemption Statute, as applicable in Bucks County, allows an owner to redeem his property sold at a tax sale by "payment" of back taxes plus interest within two years of said tax sale.  Since the Legislature has not designated in what form payment must be made, we believe the Bucks County Treasurer's Administrative Procedure refusing uncertified personal checks cannot be allowed to stand given modern-day banking procedures.

■ One small problem remains, for it is clear that the mere acceptance of a check by a treasurer should not constitute absolute payment, because any check may be dishonored.  In *Wendkos v. Scranton Life Ins. Co.,* 340 Pa. 550, 553, 17 A.2d 895, 897 (1941), we stated: ".  .  . a creditor's acceptance of a check constitutes only a conditional payment, dependent on the check finally being honored .  .  .." The question then becomes on which date is payment final?

As Judge Mencer stated in his dissenting opinion to *Douglass v. Grace Building Co., supra,* 22 Pa.Cmwlth. at 180:

"I do not advocate that the presentation of a personal check to the treasurer at any time prior to the close of the redemption period accomplishes payment. However, I would contend that, when a personal check is deposited in the normal course of the treasurer's duties *and* is paid by the drawer's bank prior to the close of the redemption period, then, under such facts, payment has been made as the statute requires." (Emphasis in original.)

We believe that this view is too restrictive and would cause as many problems as it solves. We can perceive, for example, a situation where a taxpayer's check might not clear until after the redemption date through no fault of the taxpayer.

In *Witt's Estate v. Fahs,* 160 F.Supp. 521 (S.D.Fla.1956), a taxpayer made a charitable contribution by mailing a check to a charity on December 31, 1946. The charity did not receive the check until January 4, 1947, with the check clearing shortly thereafter. The court held that payment was as of the date the check was placed with the post office, thus allowing the taxpayer a charitable deduction for 1946. The same principle is applicable to our situation. As long as a check is given to a treasurer on or before the redemption date, we can see no problem with the treasurer forgoing final action on the treasurer's deed until the check is either paid or dishonored.

Order of Commonwealth Court reversed and case remanded for proceedings consistent with this opinion.

MANDERINO, J., joins this opinion and files a concurring opinion.

POMEROY, J., dissents.

MANDERINO, Justice, concurring.

I join in the opinion of Mr. Justice O'Brien and would like to note that his opinion ends the discriminatory practice of accepting certified checks and not personal checks. A certified check (or a cashier's check or a nongovernmental money order) is a promise to pay by a private person as is a

personal check. If a personal check were not to be considered payment, neither should a cashier's check nor a certified check. It may be that some promises to pay are issued by the "rich" and personal checks by the less affluent. Nonetheless banks fail just as individuals, and their promises to pay on a date certain are not *always* honored.